**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

March 23, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Travis C. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-3724-DRM

Dear Counsel:

On December 23, 2024, Plaintiff Travis C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 7) and the parties' briefs (ECF Nos. 10, 12 and 13). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 30, 2010, alleging a disability onset of September 15, 2008. Tr. 9. Plaintiff's SSI application was ultimately approved. Tr. 9, 70. However, Plaintiff's DIB claims were denied initially and on reconsideration. Tr. 73-80. Thereafter, Plaintiff had four hearings before Administrative Law Judges ("ALJs"). Tr. 6-17; 3933-3959; 4221-4250; 4599-4639. After each hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 17; 3951; 4242; 4630. On each occasion, Plaintiff appealed, and on each occasion the case was remanded back to the SSA. Tr. 4102-4107; 4428-4431; 4864-4868; 5019-5027.

---

[1] Plaintiff filed this case against Carolyn Colvin, the Acting Commissioner of Social Security, on December 23, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Travis C. v. Bisignano*
Civil No. 24-3724-DRM
March 23, 2026
Page 2

Most recently, on September 12, 2024, Plaintiff had his fifth hearing before an ALJ. Tr. 4968-4993. Following that hearing, on October 18, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 4983. Plaintiff then filed a fifth action for judicial review. ECF No. 1. The ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 4966; *see Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity." Tr. 4970. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "obesity, insomnia, depressive disorder, anxiety/panic disorder, adjustment disorder." Tr. 4971. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "left knee pain" and "back pain." Tr. 4971. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 4971. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he could never climb ladders, ropes, or scaffolds.  He could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; but never crawl.  He could never be exposed to hazards such as dangerous moving machinery and unprotected heights.  He could work at a consistent pace throughout the workday, but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas.  He could tolerate occasional changes in the work setting.

Tr. 4973-4974. The ALJ determined that Plaintiff did not have any past relevant work, but he could perform other jobs that existed in significant numbers in the national economy such as price marker, mail clerk (non-government), and garment folder. Tr. 4981-4982. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 4983.

*Travis C. v. Bisignano*
Civil No. 24-3724-DRM
March 23, 2026
Page 3

### III.   <u>LEGAL STANDARD</u>

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   <u>ANALYSIS</u>

Plaintiff raises two arguments on appeal. First, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and not reviewable because the ALJ misapplied the symptom analysis framework set forth in the Social Security regulations. ECF No. 10 at 9-10. Although the ALJ found Plaintiff's medically determinable impairments could cause the alleged symptoms, Plaintiff contends the ALJ improperly discounted those symptoms based on "objective indicators," in violation of *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020) and *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023). ECF No. 10 at 14-16. Plaintiff also argues the ALJ erred by setting forth an inadequate hypothetical to the vocational expert ("VE") that included the limitation, "a consistent pace throughout the workday, but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas," without defining the term "production rate pace" or setting parameters around the term. ECF No. 10 at 17. The Plaintiff argues that the limitation then "infected" the RFC which contains the same limitation with the same term. ECF No. 10 at 17-21.

Defendant counters that the ALJ properly evaluated Plaintiff's symptoms under the regulations and relied on substantial evidence, including "Plaintiff's self-reports to providers as well as activities of daily living and conservative medical treatment." ECF No. 12 at 7-9. Defendant argues the ALJ did not rely overly on objective evidence or cherry-pick record evidence, but instead appropriately considered, weighed and balanced all available evidence in the record as a whole, distinguishing this case from *Arakas* and *Shelley C*. ECF No. 12 at 10-12.

As to Plaintiff's challenge to the hypothetical that the ALJ proposed to the VE, Defendant argues the ALJ explained the basis for the limitation, and that the ALJ's additional descriptors such as "no assembly line or hourly or monthly quotas" provides enough detail for courts to review. ECF No. 12 at 13-14. Defendant adds that this is especially so in conjunction with the additional context the ALJ provided of Plaintiff being able to "tolerate only occasional changes in the work setting." ECF No. 12 at 15. Defendant further argues that a court "can understand the meaning

*Travis C. v. Bisignano*
Civil No. 24-3724-DRM
March 23, 2026
Page 4

behind the phrase 'a production rate pace such as on an assembly line or work involving monthly or hourly quotas' on its own," and that the term "production rate pace" is used within the definition of "light work" in the Dictionary of Occupational Titles ("DOT") showing that it is "commonly used and needs no further definition." ECF No. 12 at 15. Finally, Defendant adds that neither Plaintiff, nor his attorney, nor the VE expressed confusion about the phrase in the hypothetical.[3] ECF No. 12 at 16.

The Court concludes that the ALJ's decision is not supported by substantial evidence. Courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations" when reviewing for substantial evidence. *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *2 (D. Md. Sept. 3, 2021) (citing *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal citation omitted)). Agency conclusions must be stated in terms the Court can understand for the Court to conduct a substantial evidence review.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), as amended (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine whether the RFC finding was supported by substantial evidence. *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5. The panel emphasized that, on remand, the ALJ must clarify how long and under what conditions the claimant could sustain focus and remain on task. *Id*. at n.5. And although the court in *Thomas* identified additional grounds for remand, later Fourth Circuit decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. In *Trena Sue*, the court likened the use of the phrase "fast paced production" to the terms in *Thomas*, both in "form and defect." *Trena Sue*, 2021 WL 4034264 at *4.

Additionally, in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), the Fourth Circuit held that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," which is similar to the phrase used here, "not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas," was not an adequate description of the limitation because "though the ALJ provided some

---

[3] In a footnote, the Commissioner contends that because Plaintiff "failed to question the expert on this subject, Plaintiff should not be permitted to raise this argument for this first time before this Court." ECF No. 12 at n.4. In support, the Commissioner relies exclusively on decisions from the Middle District of North Carolina and the District of South Carolina. *Id*. Those cases are not binding on this Court, and the Court has been unable to identify any controlling authority adopting such a forfeiture rule in this context. *See also Geneva W. v. Comm'r, Soc. Sec. Admin.,* No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("while the VE's testimony does not evince any confusion about the terms of the hypothetical, the Court has an independent duty to determine if the ALJ supported her findings with substantial evidence. *See* 42 U.S.C. § 405(g).").

*Travis C. v. Bisignano*
Civil No. 24-3724-DRM
March 23, 2026
Page 5

examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding the ALJ failed to offer a definition for his RFC determination of "non-production oriented work setting" and that "[a]s a result, we remain uncertain as to what the ALJ intended ... and cannot meaningfully assess whether there is a logical bridge between the evidence in the record and the ALJ's conclusion") (internal quotation marks omitted)).

The term used here, "not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas," is analogous to the terms used in *Thomas* and *Linger*, in that it is not defined by regulation and is susceptible to varying interpretations. Defendant points to *Andrew E. v. Kijakazi*, No. 22-1348-BAH, 2023 WL 144763 (D. Md. Jan. 10, 2023) and *Marcia S. v. Kijakazi*, No. BPG-21-679, 2022 WL 1714853 (D. Md. Mar. 1, 2022) as cases in which this Court determined that RFCs which contained the phrase "'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review." ECF No. 12 at 13 (quoting *Andrew E.*, 2023 WL 144763 at *4). Those cases predate the Fourth Circuit's decision in *Linger*. Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value," *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022), and the Court finds the reasoning of *Linger* persuasive in elucidating the holding of *Thomas* where RFCs provide examples like "such as assembly line work or piecemeal quotas," *Linger*, 2025 WL 40548, at *4, or "such as on an assembly line or work involving monthly or hourly quotas" (the instant case).  These examples do not ultimately clarify the meaning of terms like "a production rate or demand pace," *Thomas,* 916 F.3d at 312, "fast paced production requirements," *Linger*, 2025 WL 40548, at *4, or "a production pace rate" (the instant case).

Defendant adds that "the ALJ provided additional context for the production-pace limitation, finding Plaintiff could also tolerate only occasional changes in the work setting." ECF No. 12 at 14-15. However, while both limitations were intended to address Plaintiff's anxiety, *see* Tr. 4977, they are distinct limitations, with the former addressing concentration, persistence, or pace, and the latter addressing ability to adapt to changes in the work environment. Thus, the restriction to occasional changes in the work setting is not "context" for the undefined limitation to work "not at a production pace rate." Of note, the RFC in *Linger* also contained limitations on changes in the work environment, yet the court nonetheless found that the restriction to "no fast paced production requirements" precluded "meaningful review" because "there remains uncertainty as to the intended scope of the limitation." *Linger*, 2025 WL 40548, at *4-5 (limiting claimant to work environment changes "explained to the claimant ahead of time and implemented gradually over time.")

Defendant argues that the appearance of the phrase "production rate pace" in the definition of "light work" in Appendix C to the DOT shows "that the phrase is both commonly used and needs no further definition." ECF No. 12 at 15 (citing U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991)).

*Travis C. v. Bisignano*
Civil No. 24-3724-DRM
March 23, 2026
Page 6

The Court is not persuaded that the phrase "production rate pace" is in fact a term of art with unambiguous meaning solely because it appears in the definition of "Light Work" in DOT Appendix C. Appendix C states, in relevant part:

> L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. *Even though the weight lifted may be only a negligible amount, a job should be rated Light Work*: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) *when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.*

1991 WL 688702 (emphasis added).

The Court does not read this passage to mean that "production rate pace" means exactly and exclusively "the constant pushing and/or pulling of materials." Rather, it seems to mean that where a job that would otherwise be classified as sedentary requires working at a "production rate pace"—whatever that means—*and* working at that rate *in that job* results in the constant pushing and pulling of materials, the job should be classified as "Light Work." The Court notes that the term "production rate pace" is defined nowhere in this definition or anywhere else in the DOT and its appendices.

Without any clear definition of "at a production rate pace such as on an assembly line or work involving monthly or hourly quotas," it is not possible for the Court to discern whether the RFC determination was supported by substantial evidence, nor whether it was possible for the VE to know whether a person with this limitation could perform the job functions of price marker, mail clerk (non-government), or garment folder.

Because the case is being remanded on other grounds, I need not address Plaintiff's other argument(s). On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. In particular, the ALJ might consider the effects of the Fourth Circuit's holdings in *Arakas* and *Shelley C.* on the analysis required to evaluate of Plaintiff's depressive disorder symptoms under the two-step process of 20 C.F.R. § 404.1529 and SSR 16-3p. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

*Travis C. v. Bisignano*
Civil No. 24-3724-DRM
March 23, 2026
Page 7

## V.     <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge